Stamp Rite Tool & Die Corp. v Branded Leather, Inc. (2025 NY Slip Op 01832)

Stamp Rite Tool & Die Corp. v Branded Leather, Inc.

2025 NY Slip Op 01832

Decided on March 26, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 26, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
BARRY E. WARHIT
LILLIAN WAN
DONNA-MARIE E. GOLIA, JJ.

2022-05530
 (Index No. 706781/21)

[*1]Stamp Rite Tool & Die Corp., appellant, 
v
Branded Leather, Inc., et al., respondents, et al., defendants.

Jonathan E. Neuman, Fresh Meadows, NY, for appellant.
Stein Adler Dabah & Zelkowitz LLP, New York, NY (Jacob E. Lewin of counsel), for respondents.

DECISION & ORDER
In an action, inter alia, for ejectment, the plaintiff appeals from an order of the Supreme Court, Queens County (Frederick D.R. Sampson, J.), entered June 10, 2022. The order, insofar as appealed from, denied those branches of the plaintiff's motion which were for summary judgment on the cause of action for ejectment and pursuant to CPLR 3211(a)(1) to dismiss the counterclaims of the defendants Branded Leather, Inc., and Peter Farkas.
ORDERED that the order is affirmed insofar as appealed from, with costs.
The plaintiff entered into a 10-year commercial real property lease with the defendant Branded Leather, Inc. (hereinafter Branded), for the period from September 1, 2014, to September 14, 2024. Article 2 of the lease required that the premises be used solely as an office. Article 4 of the lease required Branded to be responsible for all damage to the premises, whether requiring structural or nonstructural repairs caused by Branded or its subtenants. At the same time, article 4 required the plaintiff to "maintain in good working order and repair . . . the structural portions of" the premises, including "the public portions of the building interior and the building plumbing." Additionally, article 6 of the lease prohibited Branded from taking any actions or keeping anything on the premises that might conflict with or increase the plaintiff's fire insurance. Under paragraph 18 of the rider to the lease, Branded agreed not to introduce into the premises "any chemicals or 'hazardous substances.'" In or around October 2017, Branded entered into a sublease with the defendant Dedi Corp. (hereinafter the subtenant), which operated a kitchen on the premises.
In January 2021, counsel for the plaintiff sent a lease violation letter to Branded, accusing Branded and the subtenant of "causing a hazardous condition in and around the building by storing barbeque propane tanks inside the building and in the backyard." Shortly thereafter, counsel for the plaintiff sent Branded a second lease violation letter dated February 4, 2021, accusing Branded and the subtenant of "creat[ing] a sewage backup at the main drain that requires a professional drain cleaner," noting that "[a]t this point the plumbing in the building is not at all functional." Counsel for the plaintiff then sent a lease cancellation letter dated February 23, 2021, indicating that the "lease is hereby ended and expired" since the defaults detailed in the two lease violation letters had not been remedied or cured.
In March 2021, the plaintiff commenced this action against, among others, Branded and the defendant Peter Farkas (hereinafter together the tenant defendants) for ejectment and a money judgment in the principal sum of $288,578.83, representing "rent and other charges owed under the lease, including reimbursement for utilities, taxes, insurance, alarm installations, inspections, and repairs, plumbing, and exterminator charges." In their answer, the tenant defendants asserted, among other things, counterclaims alleging breach of the lease and for a judgment declaring that the plaintiff was required to effectuate repairs due to water infiltration in the premises, that the plaintiff agreed to accept rental payments directly from the subtenant, that the plaintiff agreed to accept a rent abatement rather than effectuate required structural repairs to the premises, and that the plaintiff agreed to submit their dispute to a beth din.
Prior to the completion of discovery, the plaintiff moved, inter alia, for summary judgment on the cause of action for ejectment and pursuant to CPLR 3211(a)(1) to dismiss the tenant defendants' counterclaims. The Supreme Court, among other things, denied those branches of the motion. The plaintiff appeals.
The Supreme Court properly denied that branch of the plaintiff's motion which was for summary judgment on the cause of action for ejectment. To establish a prima facie entitlement to ejectment, a plaintiff must show that "(1) it is the owner of an estate in tangible real property, (2) with a present or immediate right to possession thereof, and (3) the defendant is in present possession of the estate" (Blake Rising, LLC v Atlantic Collision, Inc., 186 AD3d 551, 552 [internal quotation marks omitted]; see City of New York v Anton, 169 AD3d 999, 1001). The lease is authoritative as "[t]he rights and duties of landlord and tenant . . . are established by the terms of their contract" (150/160 Assoc. v Mojo-Stumer Architects, 174 AD2d 658, 659).
Here, the plaintiff established, prima facie, that it was the owner of the premises and that the tenant defendants were in present possession of the premises. However, the plaintiff failed to establish, prima facie, that it had a present or immediate right to possession of the premises. Contrary to the plaintiff's contention, despite the presence of a nonwaiver clause in article 25 of the lease (see Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y., 61 NY2d 442), the plaintiff failed to eliminate triable issues of fact as to whether it waived its right to terminate the lease under its claimed violations by Branded and the subtenant of articles 2, 4, and 6 of the lease and paragraph 18 of the rider to the lease. There are triable issues of fact as to whether the "reasonable expectations of both parties under the original lease were supplanted by subsequent actions" of the plaintiff by, inter alia, allegedly acquiescing to the subtenant's use of the premises as a kitchen for approximately four years and interfering with the tenant defendants' efforts to evict the subtenant (Simon & Son Upholstery v 601 W. Assoc., LLC, 268 AD2d 359, 360).
Moreover, pursuant to article 17(1) of the lease, if the tenant defendants defaulted on any part of the lease other than the covenants for the payment of rent or additional rent, the lease allowed the plaintiff to serve a 15-day written notice specifying the nature of the default. Upon the expiration of the 15-day period, if the tenant defendants "shall have failed to comply with or remedy such default," or if the default was "of a nature that the same [could not] be completely cured or remedied within said fifteen (15) day period" and the tenant defendants "shall not have diligently commenced curing such default within such fifteen (15) day period" and "shall not thereafter with reasonable diligence and in good faith, proceed to remedy or cure such default," the lease provided that the plaintiff could "serve a written five (5) days' notice of cancellation of [the] lease."
Here, even if the plaintiff established, prima facie, that the tenant defendants defaulted under articles 2, 4, and 6 of the lease and paragraph 18 of the rider to the lease by allowing the premises to be used for purposes other than office space, by allowing barbeque propane tanks to be stored on the premises, and by creating a sewage backup, the plaintiff failed to establish, prima facie, that these defaults could have been completely cured with the 15-day cure period, or that if those defaults could not have been cured within the 15-day cure period, that the tenant defendants had not diligently commenced curing the defaults within that period. Accordingly, since the plaintiff failed to establish, prima facie, that it had properly terminated the lease pursuant to its terms, and thus, failed to establish that it had a present or immediate right to possession of the premises, the Supreme [*2]Court properly denied that branch of the plaintiff's motion which was for summary judgment on the cause of action for ejectment (see Jannace v Nelson, L.P., 256 AD2d 385, 386).
The Supreme Court also properly denied that branch of the plaintiff's motion which was pursuant to CPLR 3211(a)(1) to dismiss the tenant defendants' counterclaims. Pursuant to CPLR 3211(a)(1), a party may move to dismiss a cause of action where the movant has a defense founded on documentary evidence. A motion to dismiss on this basis "may be granted only where the documentary evidence utterly refutes . . . factual allegations, conclusively establishing a defense as a matter of law" (Sunset Café, Inc. v Mett's Surf & Sports Corp., 103 AD3d 707, 709 [internal quotation marks omitted]; see Cord Meyer Dev. Co. v Forest Hills Owners Corp., 229 AD3d 495, 496).
Here, the lease contained numerous provisions purporting to limit the tenant defendants' ability to assert counterclaims against the plaintiff. Specifically, article 4 of the lease stated that the tenant defendants "shall not be entitled to any setoff or reduction of rent by reason of any failure of [the plaintiff] to comply with the covenants of this or any other article of this Lease" and that the tenant defendants' "sole remedy at law in such instance will be by way of an action for damages for breach of contract." Article 26 of the lease stated that "in the event [the plaintiff] commences any proceeding or action for possession of the premises, [the tenant defendants] will not interpose any counterclaim of whatever nature or description in any such proceeding including a counterclaim under [a]rticle 4 [of the lease] except for statutory mandatory counterclaims." Finally, paragraph 10 of the rider to the lease states that the tenant defendants "agree[ ] not to interpose any counterclaim or set-off of whatever nature or description, in any action or summary proceeding by the [plaintiff] against [the tenant defendants] for nonpayment of rent, damages or deficiency whether such action or proceeding arises under this Lease."
However, the lease provisions did not prevent the tenant defendants from asserting a counterclaim seeking declaratory relief (see Real Property Law § 235-h; Redbridge Bedford, LLC v 240 Bedford Ave. Realty Holding Corp., 71 Misc 3d 22, 24). Moreover, since the plaintiff is seeking, among other things, a money judgment in the principal sum of $288,578.83 for "rent and other charges owed under the lease," the tenant defendants' counterclaim for breach of the lease is "inextricably intertwined" with the relief sought by the plaintiff (All 4 Sports & Fitness, Inc. v Hamilton, Kane, Martin Enters., Inc., 22 AD3d 512, 514 [internal quotation marks omitted]; Sutton Fifty-Six Co. v Garrison, 93 AD2d 720, 722). As such, the Supreme Court "would be justified in refusing to enforce" those provisions of the lease concerning the tenant defendants' waiver of their right to assert counterclaims (All 4 Sports & Fitness, Inc. v Hamilton, Kane, Martin Enters., Inc., 22 AD3d at 514). Therefore, since the lease failed to conclusively establish a defense against the tenant defendants' counterclaims as a matter of law, the court properly denied that branch of the plaintiff's motion which was pursuant to CPLR 3211(a)(1) to dismiss the tenant defendants' counterclaims.
DILLON, J.P., WARHIT, WAN and GOLIA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court